UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MARK W. YOUNG
   Plaintiff

V.

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,
   Defendant

Case No.: 9:23-cv-81514

Judge:

Magistrate:

# COMPLAINT

Plaintiff MARK W. YOUNG (**"Plaintiff"**) sues Defendant **UNITED STATES SECURITIES AND EXCHANGE COMMISSION** (**"SEC"**) and avers:

## INTRODUCTION

1. This is a mandamus type action to compel the SEC to enforce federal securities regulation under *15 U.S.C. § 78j(b) and 17 CFR § 240.10b-5* against an insolvent entity that continues to issue junk bonds to the investing public. For judicial efficiency, Plaintiff seeks a determination of the whistle-blower incentive program under *15 U.S.C. § 78u–6* the program specifies between 10-30% of a monetary recovery. Plaintiff was also the victim of whistle-blower retaliation, but the perpetrators have civil immunity.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under *28 U.S.C. § 1331*.

1

3.  Venue is proper under *28 U.S.C. § 1391* because the SEC has offices and staff attorneys in the Southern District of Florida and the whistle-blower's information originated in the Southern District of Florida. *Exhibit 1, SEC letter.*

4.  All conditions precedent, if any, required to bring this case have been satisfied or waived.

## SUBSTANTIVE ALLEGATIONS

5.  The State of Hawaii has been insolvent since at or about 2012 until the present, but continues to issue bonds that are sold to the investing public. This is a continuing violation. State of Hawaii's geographic isolation has allowed the State of Hawaii to continuing issuing bonds despite being insolvent in violation of *17 CFR § 240.10b-5* and *15 U.S.C. § 78j(b)*.

6.  Bonds sold by the State of Hawaii are securities regulated by the SEC.

7.  The Securities Act of 1933 includes *15 U.S.C. 77b* states, "[t]the term 'security' means any … bond, debenture, evidence of indebtedness…" Thus, bonds issued by the State of Hawaii and sold to the public are under the SEC's jurisdiction.

8.  A government bond is an interest bearing or discounted security that obligates the issuer to pay the bondholder in the future. A government bond is an investment security.

9.  Plaintiff submitted information to the SEC under the Whistleblower program that the State of Hawaii sold bonds to the public while the State of Hawaii was insolvent. *Exhibit 1, SEC Letter* The SEC provided Plaintiff TCR1386976506174 for the information.

10. At or about two years after Plaintiff's initial report to the SEC, the SEC telephonically informed Plaintiff that the FBI was investigating the securities fraud allegations.

11. Plaintiff periodically updated the disclosures to the SEC and/or other federal law enforcement thru 2022.

12. In 2013, the State of Hawaii was insolvent when the State of Hawaii concealed $13.7 billion in unfunded pension liabilities in the unaudited portion of the State of Hawaii Comprehensive Annual Financial Report for 2013 ("**2013 Financial Report**"). This was in the unaudited portion of the 2013 Financial Report. *Exhibit 2, 2013 Financial Report, p. 29 and 37*.

13. In 2013, the State disclosed at or about $3,066,452,000 (~$3.0 billion) of pension liabilities in the **audited** Reconciliation Sheet while concealing $13.7 billion in pension liabilities in the **unaudited** portion the 2013 Financial Report. *Exhibit 2, 2013 Financial Report, p. 29 and 37*.

14. In 2013, the State of Hawaii had net position of $1,245,536,000 (~$1.2 billion) in the 2013 Financial Report, when the actual $13.7 billion in pension liabilities are included, the State is insolvent at or about $9.5 billion (1.2 + 3.0 - 13.7 = -9.5)  *Exhibit 2, 2013 Financial Report, p. 29 and 37*.

15. In the 2013 Financial Report, the State had at or about $7.3 billion in outstanding bonds. *Exhibit 2, 2013 Financial Report, p. 28*.

16. International accounting firm Deloitte was the auditor of the 2013 Financial Report. *Exhibit 2, 2013 Financial Report, pp. 11-13*.

17. On or about 2014, Accuity, LLP, an accounting firm headquartered in Hawaii, replaced Deloitte as auditor for the State of Hawaii financial reports.

18. In the State of Hawaii Annual Comprehensive Financial Report for 2021 ("**2021 Financial Report**"), (unaudited portion) stated the bonds issued by the State increased to $32.3 billion (an increase of $25 billion in outstanding bonds compared to 2013). *Exhibit 3, 2021 Financial Report, p. 14*

19. The 2021 Financial Report the State of Hawaii a net position of **negative** $8,233,613,000 (~ -$8.2 billion). Hawaii's report admits the state was insolvent by at or about $8.2 billion and the State of Hawaii continues to issue bonds to the public. *Exhibit 3, 2021 Financial Report, p. 37*

20. The 2021 Financial Report (unaudited portion) shows postemployment benefits of $6.5 billion and pension liability of $7.8 billion. *Exhibit 3, 2021 Financial Report, p. 15* The combined total of these liabilities is $14.3 billion, but the State only reported $7.6 billion on the Reconciliation sheet. *Exhibit 3, 2021 Financial Report, p. 37.*

21. In 2021, when the unreported liabilities are included shows the State of Hawaii was insolvent by at or about $14.9 billion (– $8.2 – $14.3 + $7.6 = – $14.9).

22. As the State of Hawaii's accounting fraud worsened, Accuity, LLP, a Hawaii based accounting firm, replaced international account firm Deloitte as auditors for both the State of Hawaii's Financial Reports.

23. Despite Plaintiff informing the SEC of the State of Hawaii's insolvency, the SEC continued to allow the State of Hawaii increase the outstanding bonds from 2013 to 2021 by at or about $25 billion.

24. The State of Hawaii's economy functions similar to a *ponzi scheme*, where new bonds are issued to investors and the proceeds are used to pay earlier bond investors.

25. The table below summarizes the State of Hawaii's financial situation:

| Description | 2013 | 2021 |
|---|---|---|
| State of Hawaii's Insolvency | – $9.5 billion | – $14.9 billion |
| Bonds outstanding | $7.3 billion | $32.3 billion |
| Auditor for State of Hawaii Financial Report | Deloitte | Accuity, LLP |

26.     If the SEC had timely acted upon Plaintiff's whistle-blower information, the SEC could have protected the public from an increase of at or about $25 billion junk bonds being issued by an insolvent entity.

27.     If the SEC had timely acted upon Plaintiff's whistle-blower information, the SEC could have had financial contributions from one of the largest accounting firms in the world, Deloitte to make bond investors whole while the bond amount was $25 billion less.

28.     Due to the SEC's failure to timely protect the public, the SEC's recovery against accounting firms may be limited to Accuity, LLP as auditor.

29.     It would have been less traumatic to the U.S. economy for the SEC to have enforced securities fraud in 2013 when the bonds were only $7.3 billion and an international accounting firm could have contributed funds, rather than having at or about $32.3 billion in bonds when enforcement is necessary with no large parties to contribute funds to make bond investors whole.

30.     State of Hawaii Annual Comprehensive Financial Report for the years 2012 to present are already in SEC's possession and/or readily available on the internet to the SEC and incorporated by reference.

**COUNT 1:  WRIT OF MANDUMUS / MOTION TO COMPEL ENFORCEMENT**

31.     The allegations in paragraphs 4 thru 30 are re-alleged and incorporated by reference.

32.     *28 U.S.C. § 1651* Writs states, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

33. *Federal Rule of Civil Procedure 81 (b)* states, "[t]he writs of …mandamus are abolished. Relief previously available through them may be obtained by appropriate action or motion under these rules."

34. Plaintiff' moves this Honorable Court to require the SEC to certify that the State of Hawaii was in full compliance with federal securities law, including, but not limited to *15 U.S.C. § 78j(b)* and *17 CFR § 240.10b-5*.

35. *15 U.S.C. § 78j(b)* states,

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange— [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

36. *17 CFR § 240.10b-5*, states that

> it shall be unlawful for any person . . . (a) [t]o employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact . . . or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

37. *17 CFR § 240.10b-5* prohibits false or misleading financial reporting, such as the State of Hawaii financial reports in issuing bonds to the investing public for the years 2012 thru the present despite being insolvent.

**WHEREFORE PREMISES CONSIDERED**, Plaintiffs prays the Court order:

1. The SEC review State of Hawaii Financial Statements issued for the fiscal years 2012 to the present.

2. The SEC file a report with this Honorable Court on based on the State of Hawaii Financial statements for fiscal years 2012 to present:

      a. Identify the fiscal years that the State of Hawaii was insolvent, if any.

      b. Determination on whether the State of Hawaii Financial Statements for the financial years 2012 to present violated any federal laws, and

      c. Identify all persons who had any input into the report prepared by the SEC for this Honorable Court.

3. Such other relief as this Court deems just and proper.

### COUNT 2: *15 U.S.C. § 78u–6* – WHISTLE BLOWER INCENTIVE PROGRAM

38. The allegations in paragraphs 4 thru 31 are re-alleged and incorporated by reference.

39. The SEC provided Plaintiff TCR1386976506174 for the information related to securities fraud involving the State of Hawaii.

40. Plaintiff's information was significant to the SEC.

41. Plaintiff provided the SEC and federal law enforcement significant assistance.

42. Plaintiff provided the SEC sufficient information for the SEC to lead to a successful securities law enforcement action.

### WHISTLE BLOWER RETALIATION

43. Plaintiff's reporting the State of Hawaii's insolvency to federal law enforcement created a motive for each state employee to retaliate against Plaintiff. If the State of Hawaii declares bankruptcy, each state employee will risk of 1) job loss due to austerity measures, 2) compensation reduction due to austerity measures, 3) loss of pension benefits, and 4) loss of

healthcare benefits.  These create a motive for State of Hawaii employees to retaliate against Plaintiff.

44. Plaintiff reporting the State of Hawaii's insolvency to federal law enforcement created a motive to for all of the State of Hawaii employees to retaliate against Plaintiff, including the State of Hawaii's judiciary.

45. The prospect of the State of Hawaii's bankruptcy created a motive for state judges to retaliate against Plaintiff, the whistle-blower thru Plaintiff's mother's trust.  The Sharon Young Trust is in Case No. T-05-1-0001 (GWBC); *In the Matter of the Sharon M.Y. Young Revocable Living Trust Agreement dated April 28, 1995;* First Circuit Court, State of Hawaii.

46. When Plaintiff's mother, Sharon Young, died in 2004 from lung cancer, the Sharon Young Trust had 80% ownership of ten (10) properties in Hawaii, including a six apartment building complex valued at or about $1 million.  *Exhibit 4, 2004 Sharon Young Trust Accounting*

47. Plaintiff and his brother, Keith Young were 50% residual beneficiaries of the Sharon M.Y. Young Revocable Living Trust (**"Sharon Young Trust"**) and to receive half distribution at age 40 and full distribution at age 45.

48. A State Circuit Court Judge Derrick W.B. Chan (**"State Judge Chan"**) *sua sponte* seized control of the Sharon Young Trust *sua sponte* and appointed Attorney James Patrick Dandar (**"Master Dandar"**) as a court appointed master to operate the Sharon Young Trust.

49. Master Dandar was paid $275 per hour from the Trust.

50. Master Dandar intentionally wasted Trust assets by leaving rental properties vacant, hiring a different real-estate agent at a full 6% commission, where Plaintiff had negotiated a discounted 5% commission real-estate agent.

51.   Plaintiff finally received distribution from the Sharon Young Trust of $61,387.52 in 2022 at age 50 (five years after age 45).  Keith Young received distribution from the Trust of $531,981.44 in 2022 at age 54.  In table form the Trust distributions were:

| Keith Young | $531,981.44 |
| Mark Young (Plaintiff) | $61,387.52 |

52.   Master Dandar overpaid $183,167.23 in Trust federal taxes to the Internal Revenue Service, so there is another distribution hearing scheduled for November 29, 2023 at 10:00 AM HST.

53.   Legal pleadings filed with the Hawaii Probate Clerk would sent to State Judge Chang **before receiving an official date stamp**.  The Hawaii Probate Clerk would only date after being returned by State Judge Chang.  This allowed State Judge Chang to make Plaintiff's pleadings late.

54.   One of Plaintiff's pleading received a date stamp twenty-nine (29) days after arriving at the Hawaii State Circuit Courthouse.

55.   On October 29, 2018, Plaintiff mailed a pleading titled, "Objection To Master's Invoice No. 1".  *Exhibit 5, Certificate of Service;  Exhibit 7, USPS Receipt*

56.   On November 1, 2018 the pleading arrived at the courthouse as shown by United States Postal Service tracking.  *Exhibit 6, USPS Tracking*

57.   On November 30, 2018, the pleading received a date stamp.  The pleading sat in the courthouse and did not receive a date stamp for twenty-nine days.  *Exhibit 5, Pleading with date stamp 29 days after arrive at the Courthouse.*

9

58. The Objection To Master's Invoice No. 1 pleading objected to State Judge Change's ex parte order approving Master Dandar's Invoice No. 1 submitted to State Judge Change ex parte. Master Dandar literally mailed Invoice No. 1 and the ex parte order approving Invoice No. 1 in the same envelope giving the beneficiaries no opportunity to object to Master Dandar's invoice.

59. Judge Chang ruled at or about half of Plaintiff's court filings late and excluded from the record. Under the appellate rule of "first impression" Judge Chang's actions terminated Plaintiff's appeal rights for those pleadings, effectively terminating Plaintiff's right to an appeal.

60. Both State Judge Chang and Master Dandar enjoy judicial civil immunity.

61. The harm as a result of the retaliation to Plaintiff was suffered in the Southern District of Florida, thus this Honorable Court has jurisdiction.

62. Plaintiff repeatedly reported the whistle-blower retaliation to federal law enforcement, but nothing happened.

## USDOJ IN THE DISTRICT OF HAWAII HAS A HISTORY OF IGNORING HIGH LEVEL PUBLIC CORRUPTION WITHIN HAWII

63. In 2006, United States District Court Judge, District of Hawaii, Samuel Pailthorpe King ("**U.S. District Judge King**") co-authored a book on public corruption in the State of Hawaii called *Broken Trust: Greed, Mismanagement, and Political Manipulation at America's Largest Charitable Trust*, University of Hawaii Press March 2006 (the "**Broken Trust Book**").

64. U.S. District Judge King served as a U.S. District Court Judge from June 28, 1972 until his death on December 7, 2010 and was a Senior United States District Court Judge when the Broken Trust Book was published in 2006.

65. The crux of the Broken Trust Book was that Hawaii politicians made *quid pro quo* appointments of Hawaii Supreme Court Justices in exchange for reciprocal trustee appointments

10

to a charitable trust now known as Kamehameha Schools formerly known as Bishop Estate (**"Bishop Estate"**).

66. The Bishop Estate trustees would loot the Trust with excessive compensation, fees, unrestricted expense accounts, and no-bid contracts to cronies for Bishop Estate owned businesses.

67. Bishop Estate was the largest charitable trust in the United States the estate of a Hawaiian monarch that originally owned at or about 9% of the land in Hawaii.

68. When Hawaii State Attorney General Marjory Bronster investigated three corrupt Bishop Estate trustees, Attorney General Bronster was removed from office and Bronster's successor ceased the corruption investigations.

69. According to the in U.S. District Court Judge King's Broken Trust Book, the Hawaii state courts subsequently sealed the corruption investigations for the sake of "closure."

70. Free e-book copies of U.S. District Judge King's Broken Trust book are available on Amazon.com and the University of Hawaii website.

71. On faith and belief, the USDOJ, District of Hawaii did not materially investigate the high level public corruption detailed in U.S. District Court Judge King's Broken Trust Book.

72. The USDOJ policy allow one person to terminate investigations in the District of Hawaii without requiring any documentation for terminating the investigation.

73. *USDOJ Justice Manual 9-2.020 – Declining Prosecution* states: "The United States Attorney is authorized to decline prosecution in any case referred directly to him/her by an agency unless a statute provides otherwise. *See JM 9-2.111*. Whenever a case is closed without prosecution, the United States Attorney's files **should** reflect the action taken and the reason for it." [Emphasis added]

74.     *28 U.S.C. § 545* states, "[e]ach United States attorney shall reside in the district for which he is appointed."  The United States Attorney for the District of Hawaii must reside in Hawaii.

75.     *USDOJ Justice Manual  9-2.020* grants the United States Attorney for the District of Hawaii discretion to terminate investigations without being required to document the reasons for terminating the investigation.

76.     The United States' government thrives from checks and balances of power.  Even United States Attorney's are made a better by peer review by other United States Attorneys from neighboring districts.

77.     The District of Hawaii is geographically isolated and at or about 2,000 miles away from peer review by a neighboring United States Attorney from another district.

78.     Under *28 U.S.C. § 541*, the President appoints the United States Attorney to each district. Hawaii's geographical isolation and relative small population size necessitates the President to rely upon local officials in the vetting of candidates to be United States Attorney for the District of Hawaii.  This allows local officials to greatly influence the selection of the United States Attorney for the District of Hawaii.  In essence, the local officials play a large role in selecting the top federal law enforcement officer in the District of Hawaii that will regulate the local officials.

79.     The United States Attorney for the District of Hawaii are the attorneys in fact and at law for the SEC, so the SEC is vicarious liability for the SEC's attorneys acts and omissions.

80.     The SEC acted in bad faith in failing to timely enforce *15 U.S.C. § 78u–6* relating the State of Hawaii issuing bonds to the investing public when the State of Hawaii was insolvent.

                **WHEREFORE PREMISES CONSIDERED**, Plaintiffs prays the Court award:

1. Plaintiff 30% of the monetary recovery pursuant to *15 U.S.C. § 78u–6*,

2. Allowing the jury to determine the amount of the monetary sanction that the SEC would have received if the SEC had timely acted upon Plaintiff's information, and

3. Such other relief as this Court deems just and proper.

## LIST OF EXHIBITS

| Exh. No. | Description | Purpose |
|---|---|---|
| 1 | SEC Letter to Plaintiff, Mark Young | Shows whistleblower status under *15 U.S.C. § 78u–6* |
| 2 | State of Hawaii Financial Report for 2013 | Shows State concealed $13.6 billion in pension liabilities in the unaudited portion of the report.  Shows State insolvent by $9.5 billion.  Shows outstanding bonds of $7.3 billion.  Shows Deloitte as auditor. |
| 3 | State of Hawaii Financial Report for 2021 | Shows State of Hawaii is insolvent by $14.9 billion with $32.3 billion in outstanding bonds and Accuity, LLP as auditor. |
| 4 | Sharon MY Young Trust Accounting for 2004 | Shows Trust owned 10 properties, including a six apartment building. |
| 5 | Objection To Master's Invoice No. 1 (pleading) | Shows a date stamp was delayed on a legal pleading for 29 days after arriving at the Courthouse.  Shows judge entered ex parte order on ex parte invoice. |
| 6 | USPS Tracking | Shows pleading arrived at the courthouse on November 1, 2018 |
| 7 | USPS Receipt | Shows pleading was mailed on October 29, 2018 |

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury by all matters so triable.

Respectfully submitted,

*/s/ Mark Young*
**Mark Young, Esq.**

13

Fla. Bar No. 48822
4870 127th TRL N
West Palm Beach, FL 33411
Tel: (561) 719-1250
mwy@kubickidraper.com (Direct)
mark.young@asbuiltlaw.com
lawace@gmail.com
**PLAINTIFF PRO SE**

14